## HENRY *v*. STATE OF MARYLAND

[No. 42, September Term, 1974.]

*Decided November 25, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Robert W. Baker, Assigned Public Defender,* and *Carl Anthony Maio, Assistant Public Defender,* for appellant.

*John P. Stafford, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Petitioner, Tyrone Steven Henry (Henry), was found guilty by a Baltimore City jury of larceny of an automobile and the receipt of $16 in stolen cash. The same jury found him not guilty of the murder of Benjamin Rubin, assault with intent to murder Shirley Rubin, and the armed robbery of Shirley Rubin. The Court of Special Appeals affirmed in *Henry v. State,* 20 Md. App. 296, 315 A. 2d 797 (1974). In granting Henry's petition for the writ of certiorari we specified "that review [should] be on the questions whether

the verdict of guilty as to the first count of Indictment No. 17203163 was invalid, and whether the sentence in each indictment was unconstitutionally imposed."

The challenge to the validity of the verdict of guilty on the first count of Indictment No. 17203163 is founded on two contentions. The first is that the jury rendered inconsistent verdicts when it initially returned a verdict of guilty on the first count (larceny of an automobile) and the third count (larceny of the use or unauthorized use of the same vehicle). Secondly, Henry claims that it was improper to permit that jury to be reassembled, moments after its discharge, and then to render verdicts of guilty on the first count and not guilty on the third count. Further facts relative to the reassembling of the jury will be developed in the process of this opinion. The Court of Special Appeals resolved these contentions unfavorably to Henry, stating:

> "We note that the appellant called the judge's attention to the alleged inconsistency after the jury had been excused. He interposed no objection to the jury's recall and reconstitution nor to any of the subsequent proceedings. The challenge to the procedure was, therefore, not raised and ruled upon below. We eschew easy reliance upon Maryland Rule 1085, however, because of our belief that even the initial verdicts were not inconsistent. Unauthorized use is, we hold, a lesser included offense within its parent crime of larceny and, as such, a conviction therefor merges into a conviction for the greater, parent crime." *Id.* at 298-99.

The contention relative to sentence, on which the Court of Special Appeals was divided 2-1, is that imposition of consecutive sentences of 15 years for larceny of the automobile and 3 years for receiving stolen goods, the maximum penalty permitted in each instance by statute, was unconstitutional.[1]

---

1. The 15 years imposed for larceny of the automobile is the maximum permitted under Code (1957, 1971 Repl. Vol.) Art. 27, § 340 for larceny of goods to the value of $100 or more. As will be noted from the quoted portion

We shall affirm the convictions. On the issue of "whether the verdict of guilty as to the first count of Indictment No. 17203163 was invalid," however, our reasoning will not follow that of the Court of Special Appeals, since we hold that unauthorized use or larceny of the use is not a "lesser included offense within [the] crime of larceny" and, thus, there was no merger in this case.

I

Merger or Inconsistent Verdicts

Henry was charged with larceny of an automobile and with unauthorized use or larceny of the use of the same vehicle. These two crimes are covered by Maryland Code (1957, 1971 Repl. Vol.) Art. 27, §§ 348 and 349. The first section, unchanged since 1809, except for the 1918 addition relative to motor vehicles, provides in pertinent part:

> "Every person convicted of feloniously stealing, taking and carrying away any horse . . . or motor vehicle . . . shall restore the horse . . . or motor vehicle stolen, to the owner thereof, or shall pay to him the full value thereof, and shall be sentenced to the penitentiary for not less than two nor more than fourteen years."

The history of § 349 was traced by Judge Markell for the Court in *Wright v. Sas*, 187 Md. 507, 510-11, 50 A. 2d 809

---

of § 348, the maximum penalty under it for larceny of a motor vehicle is 14 years. The indictment charged that Henry and others did "steal, take and carry away [one] 1968 Dodge Charger automobile, Maryland Tag #CX45-11 of the value of fourteen-hundred and fifty dollars current money; of the goods, chattels, monies and properties of Henry Schroeder . . . ." At the foot of that count there is printed:

"(Larceny-Common Law and Article 27, Secs. 340, 341),"

obviously intended in this instance to refer to § 340. Where there is a specific enactment and a general enactment "which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." *Maguire v. State*, 192 Md. 615, 623, 65 A. 2d 299 (1949). Thus, the prosecution was obliged to be under § 348, the specific enactment, and the sentence must be accordingly. We shall have more to say about the sentence later.

(1947), beginning with its original enactment by Chapter 164 of the Acts of 1880 relative to the larceny of the use of horses or vehicles. It provides in pertinent part:

> "Any person . . . who shall enter, or being upon the premises of any other person . . . shall, against the will and consent of said person . . . or their agents, wilfully take and carry away any horse, . . . or cow, or any carriage, . . . or any other vehicle including motor vehicle as defined in the laws of this State relating to such, or property whatsoever, or take and carry away out of the custody or use of any person . . . or his . . . agents, any of the above-enumerated property at whatsoever place the same may be found, shall upon conviction thereof . . . be adjudged guilty of a misdemeanor, . . . *although it may appear from the evidence that such person . . . took and carried away the property* or any portion of the same enumerated in this section, *for his . . . present use, and not with the intent of appropriating or converting the same.* . . ." (Emphasis added.)

In *Veney v. State,* 227 Md. 608, 177 A. 2d 883 (1962), Judge Prescott reviewed the authorities for the Court, stating that "[d]ecisions and text-writers use various methods and formulae for testing whether one criminal episode merges and extinguishes another, but, when analyzed, they, in general, boil down to the rule" that "if the lesser felony [or offense] is a necessary ingredient of the other, a conviction of one will bar a prosecution for the other . . ." To like effect see *Green v. State,* 243 Md. 75, 80-81, 220 A. 2d 131 (1966), and *Bennett v. State,* 229 Md. 208, 182 A. 2d 815 (1962).

This case is controlled by the holdings in *Veney* and *Ballard v. State,* 236 Md. 579, 204 A. 2d 672 (1964). In *Ballard,* as Judge Horney put it for the Court:

> "Robert Ballard and Glenn Lewis were jointly charged in a three-count indictment with the larceny, receiving and unauthorized use of an automobile. Lewis pled guilty to the unauthorized

use of it, and Ballard was convicted of the larceny thereof on the uncorroborated testimony of Lewis. The critical question presented on this appeal is whether Lewis was an accomplice of Ballard." *Id.* at 580.

A motion for judgment of acquittal was made by Ballard "based on the theory that the codefendant Lewis was an accomplice and that there was no corroboration of his testimony." Accordingly, the Court was placed squarely in the position of having to determine "[w]hether or not Lewis (who pled guilty of unauthorized use) was an accomplice of Ballard," which determination "depend[ed] on whether Lewis could have been punished for the crime of larceny for which both were indicted." This Court held that he could not, stating:

"No cases were cited to us, nor have we found any, holding that one who is guilty of the unauthorized use of a motor vehicle may also be said to have been a participant in the larceny of the same vehicle. On the contrary, the cases in this state as well as those in other states recognize that the two offenses are separate and distinct and that one cannot be convicted of both larceny and unauthorized use. See *Fletcher v. State*, 231 Md. 190, 189 A. 2d 641 (1963); *Anello v. State*, 201 Md. 164, 93 A. 2d 71 (1952); *People v. Ramistella*, [306 N. Y. 379, 385,] 118 N.E.2d 566 (1954); *People v. Tellez*, [32 Cal.App.2d 217, 219,] 89 P. 2d 451 (1939); *Eastway v. State*, [189 Wis. 56, 58,] 206 N. W. 879 (1926). See also 8A Blashfield, *Cyclopedia of Automobile Law and Practice*, § 5612." *Id.* at 581-82.

Similar views are found in *McCarson v. State*, 8 Md. App. 20, 257 A. 2d 471 (1969); *Ashby v. State*, 24 Ala. App. 466, 467, 136 So. 483 (1931); *State v. Corrolla*, 113 Conn. 103, 154 A. 152, 153 (1931); *Sandoval v. People*, 176 Colo. 414, 490 P. 2d 1298 (1971); *Leap v. State*, 189 Ind. 538, 127 N. E. 274 (1920); and *Slater v. Commonwealth*, 179 Va. 264, 267, 18 S.E.2d 909

(1942). *See also* Annot., 9 A.L.R.3d 633 (1966). As a matter of fact, in *McCarson* Judge Orth said in a footnote for the Court of Special Appeals:

> "[A] conviction of larceny of an automobile is inconsistent with a conviction of unauthorized use of that automobile. An element of larceny of an automobile is the intent to deprive the owner of his property permanently while as to unauthorized use the intent is to deprive the owner of his custody or use of his property temporarily without intent to steal it. *Anderson v. State*, 3 Md. App. 85; *Johnson v. State*, 2 Md. App. 486. It is patent that an automobile cannot be taken with the intent both to steal it and not to steal it." *Id.* at 22.

The reasoning behind these holdings is well expressed in *Sandoval* where the Colorado court said:

> "From the foregoing discussion, it appears clear that an essential element of the crime of theft is the formation of an intent to *permanently* deprive the owner of his property. On the other hand, the crime of joyriding requires as an element of proof an intent to just *temporarily* deprive the owner of his property. The intent to permanently deprive is not a progression of an intent to temporarily deprive. To state it another way, the joyriding intent does not mature into the theft intent. A culprit who takes the automobile of another has either the intent to permanently deprive or the intent to temporarily deprive. He cannot have both intents because the one is exclusive of the other. Therefore, it follows that the greater offense of theft of an automobile does not include the element of intent to temporarily deprive. Under the rule of [*People v.*] *Futamata*, [140 Colo. 233, 343 P. 2d 1058 (1959)], before an offense can be classified as a lesser included offense of a greater crime, the establishment of the greater must also necessarily establish all the elements required to prove the

lesser. As a consequence, it must be concluded that joyriding is not a lesser included offense of theft, nor is an attempt to commit joyriding a lesser included offense of attempted theft." *Id.* at 418. (Emphasis in original.)

Accordingly, the Court of Special Appeals erred in concluding that the offense of larceny of use merged into the crime of larceny and that this would dispose of the contentions relative to the reassembling of the jury.

## II

### The Reassembling of the Jury

Indictment No. 17203163 was the one which contained the counts relative to larceny and unauthorized use. It is obvious that the jury was somewhat confused on this since the record reflects that when the verdict of guilty on the first count was announced the trial judge twice asked whether this meant the verdict was not guilty on the remaining two counts. The verdict was finally recorded as guilty on the third count, but not guilty on the second count. After the jury was polled as to its verdict on another indictment and harkened to the verdict on Indictment 17203157, containing the count of receiving stolen goods, and the verdict on Indictment 17203163, the jury was dismissed by the trial judge with thanks. Then the record reflects the following:

(Thereupon, at 6:30 P.M., the jury was excused.)

THE COURT: Mr. Baker?

MR. BAKER: Well, I believe the verdicts as to Indictment 3163 are inconsistent.

THE COURT: Well, we'll bring the jury back if you're going to claim they're inconsistent. Let's bring the jury back. You mean the larceny of the automobile?

MR. BAKER: May we approach the bench?

THE COURT: Yes.

(OFF RECORD BENCH CONFERENCE)

THE COURT: Is the jury out there? We'll have to bring them back.

(Thereupon, at 6:32 P.M., the jury resumed the jury box.)

THE COURT: Members of the jury, I'll have to ask you to take your seats again, please. Members of the jury, I regret to have to ask you to do this. I'm going to ask you to go back to your jury room and consider Indictment 3163 in which you found the defendant guilty on the first count of stealing a car, not guilty of receiving stolen goods, and guilty on the third count of the indictment. I'm going to ask you to go back to your jury room and consider and make a choice between the first count and the third count of that indictment.

(Thereupon, at 6:33 P.M., the jury retired to the jury room for further deliberation.)

(Thereupon, at 6:35 P.M., the jury resumed the jury box.)

The jury then returned a verdict of guilty of larceny, the first count in the indictment, and not guilty of unauthorized use, the third count in the indictment.

Henry contends that this procedure was improper. The short answer to this contention is that Maryland Rule 885 (as does its counterpart applicable to the Court of Special Appeals, Rule 1085) provides that the "Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court." As the Court of Special Appeals said, no objection was raised by or on behalf of Henry as to the procedure followed. Rules 885 and 1085 are applicable to criminal cases as well as to civil cases. *Brice v. State*, 254 Md. 655, 661-62, 255 A. 2d 28 (1969); *Rose v. State*, 240 Md. 65, 69, 212 A. 2d 742 (1965); and *Kares v. State*, 215 Md. 396, 398, 137 A. 2d 712 (1958). The point not having been raised below, it is deemed to have been waived. *Hardesty v. State*, 223 Md. 559, 562, 165 A. 2d 761 (1960). The argument of Henry that this matter comes within the exception

contained in the rule, since it pertains to jurisdiction, is without merit. The rule provides that it is "a question as to the jurisdiction of the [trial] court [which] may be raised and decided in this Court whether or not raised and decided in the [trial] court." The point here in no way involves the jurisdiction of the trial court.

## III

### The Sentence

The trial judge sentenced Henry to serve 15 years on the larceny charge and 3 years on the receiving stolen goods charge, the sentences to run consecutively. It is contended by Henry that "the bases used by the trial judge in imposing maximum consecutive sentences in these cases were in violation of appellant's rights under the due process clause of the 14th amendment of the United States Constitution." This claim is based upon the language the trial judge used in passing sentence. The same jury which found Henry guilty of larceny of the automobile and of the receipt of $16 in stolen cash acquitted him of the murder of Benjamin Rubin, the assault with intent to murder Shirley Rubin, and the armed robbery of Shirley Rubin. Two associates of Henry were separately tried and convicted of murder in the first degree.

The trial judge said in passing sentence:

THE COURT: The remarks that I am about to make are not intended as a criticism of the jury's verdict in this case, to do so would be for naught at this stage of the proceedings although I will say I certainly do feel entirely different when they return a verdict of guilty of murder and armed robbery. The remarks that I am about to make are merely to set forth on the record the reasons that I am imposing the sentence that I will in a few moments, and to make known to a panel of Judges who may have to review the sentence if the Defendant decides to file a petition for review of sentence.

It appears to me that if this Defendant had not stolen the car from the parking lot of the Baltimore Community College and hot wired it, Mr. Benjamin Rubin possibly would have been alive today. If this Defendant had not stolen the car and picked up his two companions, Mr. Benjamin Rubin possibly would have been alive today. I consider this Defendant the commander of the troops and the pilot of the automobile. The record is clear that the other two defendants were not familiar with the neighborhood or the locality where the grocery store was situated, or indeed were they familiar with the grocery store, nor did they know the victim in this case; but it was the Defendant who was the pilot of this automobile, and being familiar with that locality and the store and the Rubins, whom he had known for many years, it was he who masterminded and engineered the holdup. I will say although perhaps the ensuing murder was not anticipated by him or the others who may have been involved after riding around in that car to various parts of the city for no good reason at all with two companions, one of whom was armed. It was he — the Defendant — who brought the car and the companion to this locality the first time ostensibly to permit the two to buy one pack of cigarettes with two persons making that purchase. After being in that store and returning to the car, it was he, the driver of the car, who was in full control of the movement of that car and the destination of that automobile that subsequently returned to the locality and the same grocery store ostensibly to permit his companions to buy a can of soft drink and in the course of this robbery Mr. Rubin was killed unnecessarily, and Mrs. Rubin was seriously injured unnecessarily. Not only was he familiar with the locality of the store, the people involved, and being in full control of the movement of the car; but in addition thereon after having seen the robbery and after these two persons came back

to his car he profited by the armed robbery to the extent that it developed in the course of the testimony. So, here is a man stealing a car and taking his companions to the locality and an armed robbery having been perpetrated and he profiting from the loot of the armed robbery. It is indicated to me very clearly he not only actively participated in the robbery and the ensuing murder, but he indeed could have prevented it by not taking these two persons to the locality, and against all this evidence there appears the bald, naive statement of this statement [sic] that he did not know that the robbery was about to be perpetrated.

It is for these reasons now that under Indictment No. 3163, the sentence is a term of fifteen (15) years imprisonment . . . dated from April 20, 1972; and as to Indictment No. 3157, the sentence is a term of three (3) years imprisonment, dated from April 20, 1972, . . . and that sentence is to run consecutive to the fifteen (15) year sentence in Indictment No. 3163.

A review panel composed of Judges James W. Murphy, Solomon Liss, and Joseph C. Howard, Chairman, acting under the provisions of what was then Code (1957, 1973 Repl. Vol.) Art. 26, §§ 132-138 (now Code (1957, 1973 Additional Supp.) Art. 27, §§ 645JA-645JG) and Rule 762, left the sentence unchanged.

Henry's version of the occurrences of April 19, 1972, as reflected in the statement of facts printed in his brief in the Court of Special Appeals, is:

"On April 19, 1972 at approximately four thirty o'clock, P.M., two persons entered the B and S Grocery Store located at 2601 W. Fayette Street in the City of Baltimore and perpetrated an armed robbery. In the course of the robbery, Benjamin Rubin was shot and shortly thereafter died as a result thereof; his wife, Shirley Rubin was also shot.

"The two robbers fled from the store and ran a short distance east where they entered a 1968 Dodge automobile driven by Appellant. The automobile was the personal property of one Henry Schroeder. Mr. Schroeder had parked the automobile in the 2600 block of Liberty Heights Avenue prior to eleven o'clock A.M., locked same, removed the keys and did not give anyone permission to drive it. After attending a class at the Community College of Baltimore, Mr. Schroeder returned to where he had parked his vehicle, found same missing and reported that fact to the police. In response to a call that same evening, Mr. Schroeder identified his car located in the parking lot of the Mondawmin Shopping Center, about two blocks from where he parked it that morning.

"According to Appellant, after the two robbers entered the car he was driving, he proceeded to the 2400 block of Liberty Heights Avenue and parked the car where it was later found.

"As Appellant was walking toward his home with the two robbers, one of them gave him some currency.

"The facts of the robbery and shooting are not significant as far as the Appellant's convictions were concerned except to mention that the brutal, senseless nature of the shooting was obviously considered by the trial judge in sentencing the Appellant on the two charges under which he was convicted."

From Henry's own testimony on direct examination one could learn that on the day the crime was committed Henry left home around noon. He "[r]an into a boy named Mitchell" who had in his possession the 1968 Dodge which Henry was accused of stealing. Henry asked Mitchell where he got the car and was told "C.C.B.", interpreted as the Community College of Baltimore. There was no key in the car and Henry knew that it was stolen. After leaving Mitchell, Henry rode

around in the car until he picked up his two alleged accomplices "around 3:30, quarter after three." After some riding and a visit to "Spoon's Red Lounge" at the corner of Baltimore Street and Franklintown Road "to see was there anybody hanging around there that [Henry] knew," they went to the 2500 block of Fayette Street to "[s]ee who was up." Henry formerly lived at 2561 W. Fayette Street. The homicide in question took place at 2601 W. Fayette Street. While his two companions "went in the store to get some cigarettes," Henry met two other acquaintances. One wanted to know where he obtained the car and was advised that "signifying is worse than stealing." Henry kept the car's engine running during the time that his friends were absent, estimated to be "[a]bout three or four minutes." They then rode to the 2700 block of Fairmount Avenue "[t]o see who was out." They were on Fairmount Avenue "[a]bout five minutes." Before leaving there Henry's companions advised they desired to return to the same store "to get a candy or soda." Henry parked the vehicle in the 2500 block of West Fayette Street so that it was about the third car from the corner. He was asked what happened when he pulled into the parking space, to which he replied "[n]othing, but Herb and Frog got out and went in the store. They left the car door open, and I didn't pay no attention to it, at first, then I seen it, I reached over and shut it." He kept the engine running. They were gone "[a]bout three or four minutes." Henry heard three shots. He "turned around, looked to see where they're coming from, and [he] seen Herb and Frog running out the store," heading "[t]owards the car." Henry said that as he was pulling out of the parking place "one of them said the woman got shot twice and the man was shot once." After they returned to the car he saw one companion pass a pistol to the other. "One was seated in the front, the other was seated in the back," the gun being "passed from the back to the front." Henry said he had not seen the gun previously. They drove up Fairmount Avenue to Franklintown Road. The car was abandoned on a parking lot in Mondawmin.

While "walking up the alley going home," after leaving Mondawmin (where they stayed "[f]ive or seven minutes"),

Henry had a conversation with his companions. He said that from this he "got it that one of them went in there [(the store where the robbery and homicide took place)] and said the other one went in there saying about a stickup." When they were "[i]n the alley going up towards Reisterstown Road," after leaving Mondawmin, one of Henry's companions "[j]ust said, 'Here,' " and gave him $16.

From Henry's testimony on cross-examination the trial judge could have learned that when Henry obtained the car from his friend the car was running, before he got in the car he saw that the ignition switch was hanging down, that he just asked Mitchell for the car and Mitchell gave it to him, and that he did not tell Mitchell that he would return the car. Henry had lived with his family for a long time in the neighborhood of the grocery store which was robbed. Although when he parked at Spoon's Red Lounge he parked directly across the street, when he let his friends out to go into the grocery store he parked about three car lengths away, notwithstanding the fact that there were no cars parked in front of the store. He had testified on direct examination that while his friends were in the grocery store the second time he had been looking in the rear view mirror removing some blackheads. On cross-examination he said that his friends had been gone about three or four minutes when he heard shots. He was looking in the mirror at that time and after he heard the shots he saw his friends run out of the store. At that point the record is:

Q. Was the car still running?

A. I believe so.

Q. Why didn't you take off?

A. Why did I take off?

Q. Why didn't you take off?

A. Why didn't I?

Q. Right.

A. When?

Q. Did you hear the shots?

A. Yes, ma'am.

146

Q. Did you see Herb and Frog coming out of that store?

A. Yes, ma'am.

Q. You knew what had happened, didn't you?

A. I didn't know; I had a good idea.

Q. You had a pretty good idea, didn't you?

A. Yeah, when I heard the shots.

Q. That's right. Why didn't you just drive off?

A. I don't know.

Q. You have no idea why you didn't drive off?

A. No, I don't.

Q. The door was closed, isn't that right, you had closed it yourself?

A. Yes, ma'am.

Q. So you stayed there, you waited, waited for them to open the door and get back in your car, one in the front seat, one in the back, and you drove off, is that right?

A. Yes, ma'am.

Q. From there you went over to Mondawmin?

A. Yes, ma'am.

Q. Why did you go to Mondawmin?

A. Cause I was going home, and stopped there.

Q. Why did you stop in Mondawmin?

A. Well, I wouldn't know.

Q. You don't know why you went there?

A. No, ma'am.

Q. I see. As a matter of fact, you not only stopped at Mondawmin but you made a phone call, isn't that right?

A. Yes, ma'am.

Q. As a matter of fact, you called one of the Wilson family, isn't that right?

A. Yes, ma'am.

Q. And you called to find out what happened in the store, isn't that right?

A. Yes, ma'am.

He said that his two friends were not working. He did not know that the money he was given came from the store. One of the friends owed him some money, but it was not $16. However, the money was given to him, so he said, after he knew that there had been a robbery at the grocery store.

In her dissent in *Henry v. State*, 20 Md. App. 296, Judge Davidson said on the issue of sentencing:

"The scope of a sentencing judge's inquiry in imposing sentence is sufficiently broad to permit him to consider information concerning the convicted person's background and other relevant matters, such as the gravity of the offense for which the person was convicted. While a sentencing judge's inquiry is not limited by the strict rules of evidence, and evidence of less probative value than is required for a determination of guilt may be considered, *Bartholomey v. State*, 267 Md. 175, 193-94, 297 A. 2d 696, 706 (1972), the judge may not consider evidence which possesses such a low degree of reliability that it raises a substantial possibility that his judgment may be influenced by inaccurate or false information. Consideration of such information leads to unwarranted assumption of guilt. For this reason it has been recognized that when they stand alone, bald accusations of criminal conduct for which a person either has not been tried or has been tried and acquitted may not be considered by the sentencing judge. *Purnell v. State*, 241 Md. 582, 584, 217 A. 2d 298, 299 (1966); *Walker v. State*, 186 Md. 440, 443, 47 A. 2d 47, 48 (1946); *Baker v. State, supra*, 3 Md. App. at 257-58, 238 A. 2d at 566. However, in assessing such factors as the background of the individual and the gravity of the offense, sentencing judges are permitted to consider reliable evidence of conduct which may be

opprobrious although not criminal, as well as the details and circumstances of criminal conduct for which the person has not been tried. *Purnell v. State, supra,* 241 Md. at 585, 217 A. 2d at 300; *see Brown v. State,* 11 Md. App. 27, 34, 272 A. 2d 659, 662, *cert. denied,* 261 Md. 722 (1971); *Turner v. State,* 5 Md. App. 332, 334-36, 247 A. 2d 412, 413-15 (1968). Because an acquittal does not have the effect of conclusively establishing the untruth of all of the evidence introduced against the defendant, *United States v. Sweig,* 454 F. 2d 181, 184 (2d Cir. 1972); *Bell alias Kimball v. State,* 57 Md. 108, 116-17 (1881), I am persuaded that for the same purposes a sentencing judge also may properly consider reliable evidence concerning the details and circumstances surrounding a criminal charge of which a person has been acquitted." *Id.* at 314-15.

The above is a correct exposition of the law. Judge Davidson believed, however, that in this instance the trial judge was sentencing upon the basis of his belief that Henry was guilty of the crimes of which he had been acquitted. We do not see it that way. In *United States v. Eberhardt,* 417 F. 2d 1009 (4th Cir. 1969), *cert. denied,* 397 U. S. 909, 90 S. Ct. 907, 25 L.Ed.2d 90 (1970), relied upon by Judge Davidson, the defendants had been tried and convicted in the United States District Court for the District of Maryland for injuring government property, mutilation of public records, and interferring with the Selective Service System. Before they were sentenced in that case, two of the defendants had participated in yet another crime, the burning of draft board records. They received a longer sentence than other defendants in the case which they attributed to the trial judge's desire to punish them, not alone for the acts for which they were convicted before him, but also for their subsequent war protesting activities. The court said:

"When the District Judge passed sentence, he was of course aware of the episode in which some of the defendants had become involved since the trial

over which he presided. In fixing sentence he certainly was not obliged to ignore the later event. Subsequent misconduct has evidentiary value in determining the period of confinement anticipated to be required to effect the purposes of the sentence. Yet it is true that he could sentence only for the offense of which the defendants had been convicted, for if he undertook to penalize them for the other offense as well, it would run afoul of due process, if not double jeopardy. State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462, 67 S.Ct. 374, 91 L.Ed. 422 (1947); Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). Precisely what passed through the judge's mind is purely speculative and we have no reason to think that the judge undertook to impose a penalty for the second offense. However, we consider it fair and in the interest of justice in this instance to remand the case to the District Court for further consideration of the sentences, and the judge may determine in his discretion whether the sentences should be reduced in the light of our statement of the law, or for any other reason for which the judge may reduce sentences under Rule 35, Fed. R. Crim. P."
*Id.* at 1015.

This Court has said many, many times that sentences within the maximum specified by statute do not constitute cruel and unusual punishment unless dictated by passion, prejudice, ill-will, or other unworthy motive. In *Mitchell v. State*, 82 Md. 527, 34 A. 246 (1896), our predecessors said:

"Our law inflicts pain not in a spirit of vengeance, but to promote the essential purposes of public justice. Severity is not cruelty. The punishment ought to bear a due proportion to the offense. Crimes of great atrocity ought to be visited with such penalties as would check, if not prevent their commission. It is impossible in the abstract to mark the boundaries which separate cruelty from just severity. If the circumstances accompanying a

crime are of unusual aggravation the punishment ought to be unusually severe." *Id.* at 533-34.

This exact language was quoted in *Toomer v. State,* 112 Md. 285, 294, 76 A. 118 (1910).

It is elementary that in passing sentence in a given case the sentence should be fashioned, to the best of the sentencing judge's ability, to the facts and circumstances surrounding the crime and the individual then being sentenced. Each defendant in each case is unique in the proper sense of that often misused word.

We have said many times that in considering a trial court's instructions to a jury they must be considered as a whole. *Wood v. Abell,* 268 Md. 214, 235, 300 A. 2d 665 (1973); *Baltimore & O.R.R. v. Plews,* 262 Md. 442, 462, 278 A. 2d 287 (1971); *Morris v. Christopher,* 255 Md. 372, 378, 258 A. 2d 172 (1969); *Nora Cloney & Co. v. Pistorio,* 251 Md. 511, 515, 248 A. 2d 94 (1968); *Atran v. Furness,* 251 Md. 216, 224, 246 A. 2d 767 (1968); *Krieger v. Mayor and City Council,* 234 Md. 382, 385, 199 A. 2d 363 (1964); *Wilhelm v. State Traffic Safety Commission,* 230 Md. 91, 102, 185 A. 2d 715 (1962); and *Lloyd v. Yellow Cab Company,* 220 Md. 488, 495, 154 A. 2d 906 (1959). It is no less true that in evaluating a statement of a sentencing judge as to whether, as alleged here, he was sentencing upon the basis of a belief that the defendant had committed more serious crimes of which a jury had acquitted him, the whole of the judge's comments must be considered. Here, we have no reliance upon some outside incident as in *Eberhardt,* but, as shown by the portions of Henry's own testimony to which we have referred, and his version of the incident as printed in the brief in the Court of Special Appeals, ample evidence from Henry's own lips of his involvement at the scene of the robbery and murder, even though the jury, as judge of the law and the facts, decided that there was not presented to it evidence sufficient for it to conclude beyond a reasonable doubt that Henry was guilty of these crimes. In passing sentence the trial judge was not required to remain oblivious to evidence of Henry's involvement in the homicide and robbery at a level less than would warrant his conviction of those crimes.

In this instance the trial judge had before him no incident of a youthful prank, but obvious involvement in a murder and a robbery, even though that involvement in the mind of the jury was less than necessary to convict him of murder and robbery. In determining a proper sentence the trial judge was entitled to consider Henry's own testimony as to the manner in which he obtained the vehicle, the use he made of it, and the manner in which it was abandoned, as well as Henry's own explanation of the circumstances under which he received the money. On this record, we conclude that the trial judge did not err in his determination that a maximum sentence was desirable.

The trial judge did err, however, in sentencing on the larceny count to 15 years, the maximum provided by the general larceny statute, when a 14 year maximum is provided in the statute for larceny of an automobile. For that reason it will be necessary to remand the case for the imposition of a proper sentence.

> *Judgment of the Court of Special Appeals affirmed in part and vacated in part and case remanded to the Court of Special Appeals for the entry of an order affirming the judgment in the Criminal Court of Baltimore under Indictment No. 17203157 (receiving stolen goods) and of the judgment under Indictment No. 17203163 (larceny of automobile) other than as to sentence and as to that for further remand to the Criminal Court of Baltimore for the imposition of a valid sentence.*