481 A.2d 812

**Darius L. CURRY and Guy Davis**

v.

**STATE of Maryland.**

**No. 1736, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 4, 1984.

Certiorari Denied Jan. 8, 1985.

172

Julia A. Doyle, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on the brief, for appellants.

Ann E. Singleton, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, Kurt L. Schmoke, State's Atty., for Baltimore City and Charles Kearney, Asst. State's Atty., for Baltimore City on the brief, for appellee.

Submitted before MOYLAN, BISHOP and ADKINS, JJ.

BISHOP, Judge.

In *Curry v. State,* 54 Md.App. 250, 458 A.2d 474 (1983) (*Curry I*) we reversed appellants' 1982 Circuit Court jury conviction for first degree murder, kidnapping and use of a handgun in the commission of a felony because the trial judge erred in denying their motions for mistrial based on prosecutorial misconduct. The new trial, which we mandated, is the subject of this appeal.

Appellants raise three questions:

I. Did the hearing judge err in denying appellants' motion to dismiss on the ground of double jeopardy?

II. Did the trial judge err in denying appellants' motion for mistrial?

III. Did the trial judge improperly impose sentence by punishing appellants for crimes of which they were acquitted?

Before the second trial appellants' motion for dismissal on the grounds of double jeopardy was denied. During their jury trial, appellants' motion for a mistrial based on the prosecutor's alleged improper actions and questions was also denied.

Although it acquitted appellants of murder and use of a handgun in the commission of a felony, the jury nevertheless found them guilty of kidnapping. After obtaining a presentence report and after hearing, the court sentenced each of the appellants to the maximum sentence permitted by the kidnapping statute, thirty years. (Md. Ann. Code, Art. 27, § 337 (1957 and 1982 Repl. Vol.).

## I.

### Double Jeopardy

A criminal defendant is protected from multiple prosecutions for the same offense by the double jeopardy clause of the Fifth Amendment to the United States Constitution, *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976), made applicable to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The defense of former jeopardy while "not provided for by any provision of the Maryland Constitution, ... is a firmly established part" of our common law. *Bennett v. State,* 229 Md. 208, 212, 182 A.2d 815 (1962); *Hoffman v. State,* 20 Md. 425, 433–434 (1863). The protection against double jeopardy is waived by a defendant who successfully moves for a mistrial, *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); *Lee v. United States,* 432 U.S. 23, 32–33, 97 S.Ct. 2141, 2146–2147, 53 L.Ed.2d 80 (1977); *Tabbs v. State,* 43 Md.App. 20, 25, 403 A.2d 796 *cert. denied,* 286 Md. 754 (1979), unless the motion was precipitated by deliberate prosecutorial or judicial misconduct intended to provoke or goad the defendant into making the motion. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *West v. State,* 52 Md.App. 624, 451 A.2d 1228 (1982). Appellants urge that their cases fall into this narrow exception to the waiver rule.

Without the specific prosecutorial intent, neither prosecutorial overreaching nor harassment will bar a retrial. *Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089, *(quoting United States v. Scott,* 437 U.S. at 93, 98 S.Ct. at 2195). The specific intent required under *Kennedy* was explicated by this Court in *West* when Judge Moylan wrote that the prosecutor must have engaged in misconduct

knowing it to be error, but desiring to 'sabotage' a probable loser either 1) by snatching an unexpected victory from probable defeat if not caught, or 2) by getting

caught, thereby provoking the mistrial, averting the probable acquittal and living to fight again another day. (A calculated sabotaging of a perceived 'lost cause' in either event; an indifference to whether he is caught or not).

52 Md.App. 635, 451 A.2d 1228. Under these circumstances double jeopardy bars a new trial because "[a] scheming prosecutor cannot be rewarded by being handed the very thing toward which he connives." 52 Md.App. at 636, 451 A.2d 1228. To prevail, appellants must show that the prosecutorial misconduct, which we held had tainted their first trial, *Curry I*, meets the above criteria.

The motion judge found that the prosecutorial misconduct at the first trial, although reprehensible, was "intended to win ... unfairly, rather than abort the trial ..." *West*, at 637, 451 A.2d 1228. Accordingly, he denied appellant's motion to dismiss on the grounds of double jeopardy.

We described the objectional conduct in *Curry I:*

[T]he prosecutor represented to the jury "that the two youthful witnesses upon whom he relied" to establish the connection between the defendants and the decedent, had no 'criminal' records. That representation was true so far as it went. Malcolm, as we have seen, had a juvenile record, [1] while Tracy, although charged with assault ..., had not, at the time the statement was made been convicted of any crime. Because the prosecutor's statement about the two youths was very similar, it was most certainly, under the circumstances of the instant case, deceiving to the jury. Moreover, characterization of the two witnesses as having lived 'exemplary' lives was a gross misstatement of fact designed to evince the trustworthiness of the witnesses and thus bolster the State's circumstantial case.

---

1. Maryland law specifically bars the use of juvenile records in any proceeding except in a criminal case where the child is charged with perjury and the existence of the juvenile record is relevant. Md. Courts & Judicial Proceedings Code Ann. § 3–824(c) (1984).

Aside from that egregious misstatement, the prosecutor then proceeded to compound his error by referring obliquely to the defendants' not having testified. The assistant state's attorney invited attention to the appellants' not testifying by informing the jury that 'a witness has an absolute right not to testify if it's going to incriminate himself.' He immediately noted that the 'defendant does not have to testify' and 'you cannot draw any inferences of guilt.' We think such an argument was contrived to circumvent the rule against commenting on a defendant's declining to testify. The prosecutor showed the inferences that the defendants did not testify because by doing so they would incriminate themselves. We believe that argument was improper and we condemn it.

Irrespective of whether a defendant be guilty or innocent, under our system of law, he or she is entitled to a fair trial. The facts of the instant case cry out that appellants were denied that fundamental right by the prosecutor's unfortunate remarks. We, therefore, reverse the judgments and remand the case for a new trial. 54 Md.App. 259–79, 458 A.2d 474.

We mandated a new trial because of "the assistant state's attorney's reckless misrepresentation of the character of the two State's witnesses, as well as the prosecutor's oblique manner of commenting upon the appellants' exercise of their right not to testify." *Id.* at p. 252, 458 A.2d 474. Appellants argue, based on our characterization of the prosecutorial misconduct in *Curry I,* that under *Kennedy* and *West,* double jeopardy should have barred their retrial. They contend that the prosecutor, knowing that his conduct was improper, was "indifferent to the possibility that his improper remarks would impel a mistrial" and that the *West* criteria should be interpreted to include not only misconduct intended to "sabotage a probable loser" but also where a prosecutor, unsure of the outcome of the trial, acts with "reckless indifference" to whether his actions will precipitate a motion for mistrial.

Appellants' argument must fail. The *Kennedy* Court squarely held that:

[t]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Kennedy, supra,* 456 U.S. at 679, 102 S.Ct. at 2091, quoted in *West,* 52 Md.App. at 637–38, 451 A.2d 1228.

Moreover, in *West* we emphasized that:

[o]rdinarily, when the prosecutor injects error into the trial, grievous as that may be, the sanction is mistrial or reversal. It is only where the prosecutor deliberately subverts the right of the defendant to stay with the original tribunal that the double jeopardy bar becomes the appropriate relief.

...[W]e must look not to the error itself and not to the plight of the defendant who has been afflicted by that error *but rather to the intent with which the error was committed.* 52 Md.App. 633–34, 451 A.2d 1228. (Emphasis supplied).

█ We can find no error in the motion judge's conclusion which is consistent with our own in *Curry I,* that the prosecutorial misconduct in the first trial was intended to promote the State's case, not to sabotage the trial. Had we believed the misconduct was impermissibly motivated, we would have reversed and directed that the charges be dismissed, rather than remanded for a new trial.

## II.

### *Motion for Mistrial*

On direct examination, an eyewitness testified that he had seen Curry holding a gun so that it was "hanging out the window" of the car into which the victim had been forced. The witness then testified that while running from the scene, he heard a "click" which "sounded like a gun."

Shortly thereafter the prosecutor apparently backed away from the witness while requesting the witness to let him know when he had gone the same distance from the witness that the witness was from the car when he heard the "click". When he was told by the witness that he had reached that designated distance, the prosecutor "clicked" a gun which he had borrowed from a nearby police officer and asked the witness if he had heard the sound. Defense counsel immediately objected to the question, asked for a bench conference and moved for a mistrial. The objection was sustained but the mistrial motion was denied.

Trial defense counsel based his motion on the fact that the jury, having seen the gun, would be misled into believing that the gun was the murder weapon, when, in fact, none had been recovered. The trial judge stated that an instruction could cure any prejudice, and she proceeded to instruct the jury:

> Ladies and Gentlemen, I don't know what you observed from what happened just now. I am going to ask you to strike it from your minds entirely. That gun, which Mr. Kearney is giving back to the police officer, has absolutely nothing to do with this case. He apparently borrowed it from a police officer to try to use it to demonstrate something, which he is not permitted to do, and I have asked him to return the gun, which he just did.

> \* \* \* \* \* \*

> I will ask you to totally ignore the whole matter ....

During appellants' arguments on their motions for new trials, based on this issue, the court explained:

> "I think I dealt rather sternly with that at the time. If I had thought at the time that his action was so prejudicial as to require that the trial start over again, I would have taken the measure. My concern was more about my not wanting people to click handguns in my courtroom. That was of a greater concern than any prejudice to the trial. I don't really see that it caused any extreme or even moderate prejudice."

■ The denial of a motion for mistrial is reviewed on appeal only to determine whether there was an abuse of discretion. *Basiliko v. State*, 212 Md. 248, 260–61, 129 A.2d 375 (1957). The decision of the trial court in the exercise of that discretion will not be reversed on appeal unless there has been clear prejudice to the defendant. *Lusby v. State*, 217 Md. 191, 195, 141 A.2d 893 (1958).

■ There is no prejudice to the defendant if the court can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jury] was not substantially swayed by the error...." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The factors to be considered are:

1. The closeness of the case;
2. The centrality of the issue affected by the misconduct, and
3. The steps taken by the trial judge to mitigate the effect on the jury.

*Gaither v. United States*, 413 F.2d 1061 (D.C. Cir.1969) (cited and quoted in *Wilhelm v. State*, 272 Md. 404, 416, 326 A.2d 707 (1974) and *Curry I*, 54 Md.App. at 257, 458 A.2d 474).

■ Applying this test, considering the immediate and forceful curative instruction given by the trial judge and that he "is in the best position to evaluate and assess" whether the error, in context and in relation to the other factors in the trial, was in fact prejudicial, *Wilhelm*, 272 Md. at 429, 326 A.2d 707, we find no prejudice. In contrast, we note that in *Curry I* it was precisely the *failure* of the trial judge either to grant a mistrial or take any steps to mitigate the prejudice caused by the prosecutor's improper arguments which amounted to an abuse of discretion, mandating reversal and a new trial. *Curry I*, 54 Md.App. 257–58, 458 A.2d 474.

### III.

### *The Sentence*

Appellants argue that the imposition of thirty years, the maximum statutory penalty for kidnapping, was based on the judge's belief that appellants were guilty of murder and the use of a handgun in the commission of a felony, charges of which the jury had acquitted them, and that this was an improper and unconstitutional consideration.

■  Appellants argue that they received the maximum sentence for kidnapping because the trial judge believed that they were guilty of the two crimes of which they had been acquitted.  Even though he may consider subsequent misconduct, a judge may sentence only for the offenses which the defendants have been convicted and may not penalize them for other offenses of which they have not been convicted.  *United States v. Eberhardt*, 417 F.2d 1009, 1015 (4th Cir.1969), *cert. denied*, 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970).  If appellants' contention is correct and they were given the maximum sentence, in part, because the judge considered their *acquittals* of the two other crimes of which they had been charged, then this would amount to a violation of their constitutional rights to due process.  *Eberhardt, supra,* at 1015.

As the Court recently held in *Teasley v. State*, 298 Md. 364, 370, 470 A.2d 337 (1984):

Appellate review of sentences is extremely limited in Maryland;  only three grounds are recognized:  (1) the sentence may not constitute cruel and unusual punishment or otherwise violated constitutional requirements;  (2) the sentencing judge may not be motivated by ill-will;  prejudice or other impermissible considerations;  and (3) the sentence must be within the statutory limitations. *Logan v. State*, 289 Md. 460 [425 A.2d 632] (1981); *Kaylor v. State*, 285 Md. 66 [400 A.2d 419] (1979); *Clark v. State*, 284 Md. 260 [396 A.2d 243].

Appellants' sentences were within statutory limits. Md. Ann. Code, Art. 27, § 337 (1957 and 1982 Repl. Vol.) The only impermissible consideration alleged by appellants is of constitutional magnitude, encompassed by (1) above. In support of their argument appellants rely on the following statements made by the trial court in passing sentence:

"These defendants were previously tried and convicted of the first degree murder and using a handgun in the commission of a crime of violence as well as kidnapping. The jury which on a pretrial [sic] heard I would assume the same evidence as the first jury did for reasons unclear to the court to determine that the State had fallen short of proving their guilt beyond a reasonable doubt in the murder and handgun case and convicted them only of kidnapping the individual who was within a few minutes later found brutally shot and killed. I do not think I am obliging [sic] to ignore the fact that the victim of the kidnapping in which they were convicted died very soon thereafter by bullets in his head. Even though the jury did not feel satisfied that the same individuals who kidnapped him killed him. I can at least accept if he hadn't been kidnapped he would not have been killed.

Therefore, I find that the defendants in escaping the first degree murder and handgun convictions they previously were under—have gotten a great deal of leniency and benefit from their retrial and there is nothing in the crime or in the people who committed it which would justify my imposing a sentence of less than the maximum for the crime of kidnapping of which they were convicted. In both cases the maximum sentence falls within the guidelines in any event. Accordingly to Mr. Davis the sentence of the court would be a term of thirty years to the Department of Correction dating from. . . .

\*     \*     \*     \*     \*     \*

April the 7th, 198[1]

\*     \*     \*     \*     \*     \*

And as to Mr. Curry, a term of thirty years dating from April the 22nd, 1981."

■ A trial court may "properly consider reliable evidence concerning the details and circumstances surrounding a criminal charge of which a person has been acquitted." *Henry v. State,* 273 Md. 131, 147–48, 328 A.2d 293 (1974); *Logan v. State,* 289 Md. 460, 481, 425 A.2d 632 (1981). This is so because an acquittal does not necessarily establish the untruth of all the evidence introduced at trial and, therefore, the trial judge is not obliged to ignore evidence of the defendant's involvement in an alleged offense "at a level less than would warrant his conviction of those crimes." *Henry,* 273 Md. at 150, 328 A.2d 293.

The trial judge has broad discretion to consider evidence of such involvement presented at trial, even though the jury considered it insufficient to convict. *Id.*

This broad discretion ... has for some time been recognized to be both a necessary and a desirable requisite to the prevalent modern penal philosophy of individualized punishment.

*Logan,* 289 Md. at 481, 328 A.2d 293. (citations omitted). Pursuant to this philosophy, "the sentence should be fashioned to the best of the sentencing judge's ability to the facts and circumstances surrounding the crime and the individual then being sentenced." *Henry,* 273 Md. at 150, 328 A.2d 293.

■ In the case *sub judice,* the judge, in making her sentence determination, did consider the facts and circumstances surrounding the kidnapping and the individual characters of each appellant, and was correct as a matter of law that she was not obliged "to ignore the fact that the victim of the kidnapping in which they were convicted died very soon thereafter by bullets in his head." Under *Henry,* she was permitted to find, based on ample evidence in the record, that if the victim "hadn't been kidnapped, he would

not have been killed ... [e]ven though the jury did not feel satisfied that the same individuals who kidnapped him killed him." *See* 273 Md. at 141, 328 A.2d 293 (trial judge permitted to consider fact that "if this defendant had not stolen the car and picked up his two companions, Mr. Benjamin Rubin possibly would have been alive today.")

The line between penalizing a defendant for crimes for which he was acquitted *because* he was acquitted and considering, in the exercise of informed discretion, the facts and circumstances surrounding those offenses, is admittedly fine. The constitutional and societal interests at stake do not lend themselves to a "bright line" rule. Although we hold that the trial judge in this case did not abuse her discretion, she came disturbingly close to crossing that fine line and violating appellants' constitutional rights when, in imposing sentence, she said:

> ... I find that the defendants in escaping the first degree murder and handgun convictions they previously were under—have gotten a great deal of leniency and benefit from their retrial and there is nothing in the crime or in the people who committed it which would justify my imposing a sentence of less than the maximum for the crime of kidnapping of which they were convicted.

In sentencing, the appearance of non-vindictiveness is almost as important as non-vindictiveness itself. Had it appeared to us that the Court based the length of the sentence on the fact that appellants, by escaping their previous first degree murder and handgun convictions, had "gotten a great deal of leniency and benefit from their re-trial ..." we could not affirm. After viewing her statement in context, however, we are satisfied that the trial judge did not base her sentencing decision on appellants' prior acquittals. *Henry* at 150, 328 A.2d 293. Accordingly, there being no abuse of discretion, we affirm.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.