DARIUS LaFARGE CURRY AND GUY DAVIS v.
STATE OF MARYLAND

[No. 929, September Term, 1982.]

*Decided April 8, 1983.*

The cause was argued before GILBERT, C. J., and WILNER and BLOOM, JJ.

*Clarence W. Sharp, Assigned Public Defender* for appellant Curry. *Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant Davis.

*Valerie V. Cloutier, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Kurt L. Schmoke, State's Attorney for Baltimore City,* and *John Denholm, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

A jury in the Criminal Court of Baltimore [1] convicted Darius LaFarge Curry and Guy Davis of first degree murder, kidnapping and the use of a handgun in a crime of violence. Curry and Davis were each sentenced to life imprisonment and a consecutive forty-five additional years. We reverse and remand for a new trial.

We take that action, not because the evidence fails to

---

**1.** As of January 1, 1983, the several courts in Baltimore City were consolidated into the Circuit Court for Baltimore City.

sustain the jury's verdict,[2] but because of the assistant state's attorney's reckless[3] misrepresentation of the character of two State's witnesses, as well as the prosecutor's oblique manner of commenting upon the appellants' exercise of their right not to testify.

Prior to trial on the merits, hearings were held on several pretrial motions. Through one of the motions, defense counsel sought to ascertain whether two witnesses, Malcolm Cunningham and Tracy Fuller, had records of juvenile delinquency. Following some discussion with the hearing judge, the prosecutor undertook to ascertain the existence *vel non* of those records. It was learned that the witnesses, both of whom were over age eighteen at the time of trial, had histories of juvenile offenses but neither had an adult conviction. Cunningham had been found to be delinquent because of theft. He was, in fact, on probation for that offense at the time of the trial in the instant matter. Fuller had been charged with acts that had he been an adult, would have constituted robbery and storehouse breaking. Fuller was, however, acquitted of those offenses. Nevertheless, there was an outstanding charge of aggravated assault on which juvenile jurisdiction had been waived.[4]

There was no testimony before the jury of Cunningham's and Fuller's juvenile involvement. Maryland Courts and Judicial Proceedings Code Ann. § 3-824 (c) specifically bars the use of juvenile records in *any* proceeding, except in a

---

**2.** The evidence adduced in behalf of the State satisfies the requirements of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *reh. den.* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), and Rusk v. State, 43 Md. App. 476, 406 A.2d 624 (1979), *rev'd on other grounds,* 289 Md. 230, 424 A.2d 720 (1981).

**3.** Paraphrasing General of the Army, Omar N. Bradley, in the trial of a case, "there is a great difference between recklessness and aggressiveness, but the distinction seems to have become blurred in [the prosecution's] mind." O. N. Bradley, "A General's Life," ch. 20, p. 183 (1983).

**4.** This Court affirmed the waiver in In re Tracey F., No. 463, September Term, 1982, an unreported per curiam opinion filed December 30, 1982. The facts set out in that opinion reflect that the appellant was alleged to have stabbed two youths, one of whom required open heart surgery; the other, "multiple stitching." We observe that the spelling of the appellant's name in No. 463 is different than in the instant case. We infer, however, that they are one and the same person.

criminal case where the child is charged with perjury and the existence of the juvenile record is relevant. *See Wentworth v. State,* 33 Md. App. 242, 364 A.2d 81 (1976).

The testimony of Cunningham and Fuller was crucial to the prosecution's largely circumstantial case, inasmuch as the two witnesses said they saw Lyn Cunningham, the murder victim, "pulled" into a car in which Curry and Davis were riding. Lyn Cunningham's body was found a short time thereafter. Connecting the victim to the appellant was an essential element of the prosecution.

Malcolm Cunningham testified that he was afraid of Curry because "for about a month" before the killing, Curry would point a finger at Malcolm and say: "Pow, you die!" There was also testimony to the effect that Davis had shot Malcolm sometime in 1979.[5]

Tracy Fuller told the jury that Curry and Davis had threatened Malcolm at a point in time prior to the slaying of Malcolm's brother, Lyn Cunningham.

The prosecutor, during closing argument, after a hard fought trial, converted Courts Art. § 3-824 (c) from a statute designed to protect juveniles, into a weapon for the State. Aware that neither the juvenile involvement of Malcolm Cunningham and Tracy Fuller nor the waiver of the assault charge against Fuller could be made known to the jury, the prosecutor said to them:

> "The State called as their witness Mr. Malcolm Cunningham. Has the nickname of Satch. Mr. Malcolm Cunningham said he had an eighth or ninth grade education. He took the stand and he testified. No one impeached him. He has no criminal record. You don't have to be a high school graduate. You don't have to be a college graduate. You don't have to be an accountant, doctor, lawyer or judge to be a good person and there is absolutely nothing to show he is not a good person or not a truthful person.

---

5. The facts surrounding that shooting are not revealed in the record.

. . . .

As you remember, Tracy Fuller has a little more education for whatever that means. You would catch somebody in contradictions. You saw yesterday how easy it is to catch people telling lies and contradictions. It didn't take very long in this case.

Tracy, you remember, was going to school. I believe he was in the 11th grade. He goes to school nine to twelve in the morning and in the afternoons from one to four. What does he do? *Is he a robber? Is he a hood? Is he selling dope? No. I'll tell you what he's doing. He's working with the aged, senior citizens. Does that sound like the type of fellow who would come in here and lie and with these two experienced attorneys for two days of questioning not being able to catch them in one contradiction? Do you know why you cannot find a contradiction? Because it's the truth.*" (Emphasis supplied.)

Apparently unable to give rein, at that point, to his unchallenged zeal, the prosecutor continued to supply armor plate to the "Achilles heel" of the State's case, that is, the credibility of Malcolm Cunningham and Tracy Fuller. He informed the jury:

"*Based on these young men's backgrounds, the fact they have kept an exemplary life themselves, I believe it is more than a reasonable explanation.* Of course you are going to hear contrary by defense attorney, and that is his right and that is his duty, but think about it." (Emphasis supplied.)

At the conclusion of the prosecutor's argument, the court announced a recess. A sharp exchange between counsel then occurred before the jurors had time to leave the area. A bench conference ensued. The record discloses:

"Mr. DENHOLM [Asst. State's Attorney]: There was no objection.

Mr. MURPHY [Defense Counsel]: He has said —

Mr. DENHOLM: There was no objection, Your Honor.

Mr. MURPHY: Fine, Mr. Denholm.

THE COURT: Wait a minute. Wait a minute.

MR. MURPHY: He has said they have lived exemplary lives. Now, that is absolutely untrue. It is known to Mr. Denholm that each of these individuals have juvenile records. It is my request that before the jury deliberates in this case the juvenile records of Fuller and Cunningham be disclosed to the jury. The State has opened the door to it."

The trial judge properly rejected the request. Defense counsel argued strenuously that the judge should not allow the jury to be misled by the state's attorney. He stated that inasmuch as the judge was not "going to do anything about [the Assistant State's Attorney's] outrageous misrepresentation, . . . a mistrial [is requested] in this case." That motion was promptly denied.

A second statement by the prosecution was also called to the judge's attention. During his argument the assistant state's attorney said to the jury:

"Now, being a witness, anybody, as long as you're not convicted of perjury, may be a witness if they desire in the Maryland courts, but *a witness has the absolute right not to testify if it's going to incriminate himself. There will be instructions in this particular case that a defendant in a criminal trial has the absolute right not to testify in a criminal trial, and the fact that he does not testify you can not draw any inferences of guilt.* A defendant also does, in the State of Maryland, have the absolute right to testify if he desires to." (Emphasis supplied.)

Objection was voiced also to that comment, but to no avail.

The State now asserts that the defense objections were not timely since counsel waited until the prosecutor completed his argument before they interposed those objections. While we would prefer that the objection be invoked at the time the supposedly objectional comments are made, we, nevertheless, believe the matter to be preserved for our review. We must remember that defense counsel were in a precarious position. If they had objected at the time the remark was made, they might have underscored the prosecutor's comments and perhaps added greater impact to those remarks. Additionally, they ran the risk of the court's overruling the objections, thus emphasizing to the jury the "correctness" of the comments.

The State, while agreeing "that the prosecutor's reference to an exemplary life" was improper, contends that the remark was not a material factor in the conviction and does not mandate a reversal." The State further asserts that the argument by the prosecutor was within the "latitude allowed" by *Wilhelm v. State,* 272 Md. 404, 412-13, 326 A.2d 707 (1974). The *Wilhelm* Court, in an extensive discussion, noted that the general rule is that counsel may comment upon the evidence and inferences reasonably deducible from that evidence. Counsel may freely point out to the factfinder that evidence which is most favorable to counsel's position, and in so doing he or she may collate, sift, or treat it in his or her own way. 272 Md. at 412.

Judge O'Donnell, writing for the Court of Appeals in *Wilhelm,* went on to pronounce:

"The conduct of the trial must of necessity rest largely in the control and direction of the presiding judge and an appellate court should in no case interfere with the judgment unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party." 272 Md. at 413.

. . . .

"When in the first instance the remarks of the State's Attorney do appear to have been prejudicial, a significant factor in determining whether the jury were actively misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action, as the exigencies of the situation may have appeared to require, to overcome the likelihood of prejudice, such as informing the jury that the remark was improper, striking the remark and admonishing the jury to disregard it." 272 Md. at 423-24.

The fact that the comments by the prosecutor were improper does not *ipso facto* compel the convictions to be set aside. Maryland law requires that such improper comments must appear likely to have misled or influenced the jury to the prejudice of the accused. There is no question in this case that the jury was misled or influenced. The question is whether there could have been prejudice to the accused.

*Wilhelm* indicated that the factors to be taken into account when determining whether a prosecutor's remarks are prejudicial to the accused are: the closeness of the case; the centrality of the issue affected by the error; and the steps taken by the trial judge to mitigate the remark's effects on the jury. 272 Md. at 416, (citing) *Gaither v. United States,* 413 F.2d 1061 (D.C.Cir. 1969). Viewing the matter now before us in light of those factors, it is obvious that the credibility and veracity of the State's two youthful witnesses is the keystone which holds the State's case together. Without Malcolm Cunningham's and Tracy Fuller's eyewitness account of Lyn Cunningham's kidnapping, it is extremely doubtful that the State would have attained the conviction of Curry and Davis.

We observe that the trial judge, in the case *sub judice,* took no action except to deny the motion to inform the jury about the juvenile records and to deny the motion for a mistrial. With respect to the juvenile records, the judge was correct.

The statute proscribing the use of a juvenile record, other than for the exception contained within the statute, would not only be improper but unlawful. Courts Art. § 3-824. The failure to grant the mistrial or to *sua sponte* take some other appropriate action, however, we think amounts to an abuse of discretion and mandates reversal. *See Holbrook v. State,* 6 Md. App. 265, 270, 250 A.2d 904 (1969).

Generally, comments by prosecutors on the reputation or credibility of witnesses have been condemned as prejudicial conduct. *People v. Adams,* 182 Cal. App. 2d 27, 5 Cal.Rptr. 795, 800 (1960). *See also State v. Heaton,* 149 Wash. 452, 271 P.89, 90-92 (1928); *People v. Huff,* 173 Mich. 620, 139 N.W. 1033, 1036 (1913); *People v. Pantages,* 212 Cal. 237, 297 P. 890, 894-95 (1931). In *People v. Adams, supra,* the court said that the prosecutor's use of the prestige of his office "to assist in establishing the veracity of . . . witnesses," did, in fact, give credence to the witnesses. 5 Cal.Rptr. at 800.

In this case now before us, the prosecutor represented to the jury that the two youthful witnesses, upon whom he relied to establish the connection between the defendants and the decedent, had no "criminal" records. That representation was true so far as it went. Malcolm, as we have seen, had a juvenile record, while Tracy, although charged with assault, *see* n. 3, *supra,* had not, at the time the statement was made been convicted of any crime. Because the prosecutor's statement about the two youths was verisimilar, it was most certainly, under the circumstances of the instant case, deceiving to the jury. Moreover, characterization of the two witnesses as having lived "exemplary" lives was a gross misstatement of fact designed to evince the trustworthiness of the witnesses and thus bolster the State's circumstantial case.[6]

---

**6.** We observe that the Code of Professional Responsibility, Disciplinary Rule 7-102 (A), provides: "In his representation of a client, a lawyer shall not:

(5) Knowingly make a false statement of law or fact."

Aside from that egregious misstatement, the prosecutor then proceeded to compound his error by referring obliquely to the defendants' not having testified. The assistant state's attorney invited attention to the appellants' not testifying by informing the jury that "a witness has an absolute right not to testify if it's going to incriminate himself." He immediately noted that the "defendant does not have to testify" and "you cannot draw any inferences of guilt." We think such an argument was contrived to circumvent the rule against commenting on a defendant's declining to testify. The prosecutor sowed the inference that the defendants did not testify because by doing so they would incriminate themselves. We believe that argument was improper and we condemn it.

Irrespective of whether a defendant be guilty or innocent, under our system of law, he or she is entitled to a fair trial. The facts of the instant case cry out that appellants were denied that fundamental right by the prosecutor's unfortunate remarks. We, therefore, reverse the judgments and remand the case for a new trial.

> *Judgments reversed.*
> *Case remanded for a new trial.*
> *Costs to be paid by Mayor and City*
>    *Council of Baltimore.*