494 A.2d 992

James P. SCOTT

v.

STATE of Maryland.

No. 1631, Sept. Term, 1984.

Court of Special Appeals of Maryland.

July 12, 1985.

Certiorari Denied Oct. 21, 1985.

312

**314**

Edward Smith, Jr., Baltimore (Cummings & Smith, P.A., Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. and John Thompson, Asst. State's Atty. for Baltimore City, Baltimore, on brief), for appellee.

Argued before GARRITY, ADKINS and GETTY, JJ.

GETTY, Judge.

Appellant James P. Scott was convicted by a jury in the Circuit Court for Baltimore City (Bothe, J.) of murder in the first degree, use of a handgun in the commission of a crime of violence and violation of probation. He was sentenced, from the judgments entered thereon, to a total of life plus seventeen years imprisonment. In this appeal, Scott contends: [1]

1. The trial judge erred when she unfairly restricted defense counsel's cross-examination of Willie Banks, Jr. and, therefore denied the defendant's right of confrontation.

2. The trial judge erred in failing to properly rule on the defendant's Motion to Suppress the photographic identification.

3. The jury was allowed to consider a statement which had not been properly admitted into evidence.

4. The trial court erred in failing to grant a manslaughter instruction.

5. The State unfairly argued to the jury that Orpah Jordan had no criminal record, said statements were untrue, and amounted to unfair prosecutorial misconduct.

---

**1.** Appellant neither briefed nor argued an eighth issue: "not present at bench conferences." The issue is waived and we shall not address it. Had we done so, it has no merit.

6. The trial court erred in allowing hearsay evidence relating to the identification of the defendant upon his arrest on February 25, 1983, since the prejudicial effect clearly outweighed the probative value of the evidence.

7. The trial court erred in finding appellant guilty of a violation of probation.

The record disclosed that on January 25, 1983, at approximately 9:45 P.M. the victim, George Bishop, III, went to the Shake and Bake Family Fun Center in Baltimore City to play video games. After playing one video game, Bishop left the Fun Center accompanied by three companions: Willie Banks, Jr., Orpah Jordan and John Blake. According to Banks, as the four men were leaving the building, the victim was bumped by appellant. The victim and appellant then argued until appellant turned away. As the victim was walking away, Banks noticed that appellant had pulled out a gun. Banks yelled, "[l]et's run," and the four began running. Banks then heard five or six gunshots being fired. After the shooting Banks saw the victim lying down and then saw appellant looking at the victim and then running away. Banks' testimony was corroborated by both John Blake and Orpah Jordan.

### Prosecutorial Misconduct

■ We shall address appellant's fifth issue first. We do so because of the seriousness of the charge, prosecutorial misconduct, and the fact that the State was either unaware of, or failed to follow, this Court's admonition on a kindred issue in *Curry (and Davis) v. State,* 54 Md.App. 250, 458 A.2d 474 (1983).

Appellant's issue number five alleges that the State unfairly argued to the jury that Orpah Jordan had no criminal record; that said statements were untrue and amounted to prosecutorial misconduct. According to the record, Jordan had no convictions as an adult, but he had been adjudicated as a delinquent minor in 1978 following an armed robbery

and a handgun violation. He received probation at that time.

At the time of the trial herein, Jordan had been charged with an unrelated assault and rape. Over objection by the State, defense counsel established that Jordan was currently incarcerated in the Baltimore City Jail. In closing argument, defense counsel advised the jury that Jordan "came over from the Baltimore City Jail where he's been with Mr. Scott for several months." Later, in commenting on the credibility of the State's witnesses, counsel said, "[h]ere's the combined criminal record, thefts, false report to police, receiving stolen goods, failure to obey, one came from jail."

In response, the State told the jury that although Jordan was in jail, he had not been convicted and thus had no prior criminal record. The State commented:

"Mr. Miles [defense counsel] would have you believe Orpah Jordan is in jail. That's true. Orpah Jordan has not been convicted nor, as Mr. Miles likes to bring out, on any criminal record, prior criminal record shown on the part of Orpah Jordan, no prior criminal record."

Appellant's counsel objected to the characterization and, following a bench conference, the trial judge concluded that the State was responding to appellant's comments concerning Jordan's jail status. The objection, therefore, was implicitly overruled.

It is with considerable ill grace that appellant cries "foul" when the State responds in kind to defense counsel's improper comments suggesting that Jordan is not a credible witness because he is in jail. Lest the State take succor from our admonishing the defense, we point out that the State's response was, indeed, "foul." A proper response by the State would have been a timely objection to the argument being made and a request for an instruction by the court that convictions, not arrests, are properly considered in determining the credibility of witnesses.

The State was well aware that State's witness Jordan had a juvenile record arising from a serious violation, armed

robbery. The trial court properly ruled that juvenile offenses are not admissible for purposes of impeachment.[2] We do not suggest that the State's comment, that a witness had "no prior criminal record," is untrue. Section 3–802 of Courts and Judicial Proceedings Article clearly establishes that one of the purposes of the law pertaining to juveniles is:

> "[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior."

We do suggest, however, that where, as here, a witness had been adjudicated a delinquent minor as a result of the commission of a serious offense that would be a crime if committed by an adult, it is both misleading and deceptive to inform the jury that the witness has no criminal record. The clear import of such comment is to present the witness as a law abiding citizen which is patently false.[3]

Appellant contends that under *Curry (and Davis) v. State*, 54 Md.App. 250, 458 A.2d 474 (1983), reversal is mandated. We think the two cases, admittedly similar, are distinguishable. In *Curry*, the murder convictions of Curry and Davis were reversed (Gilbert, C.J.):

> "[n]ot because the evidence fails to sustain the jury's verdict, but because of the assistant state's attorney's reckless misrepresentation of the character of two State's witnesses, as well as the prosecutor's oblique manner of commenting upon the appellants' exercise of their right not to testify."

---

2. Md.Cts. & Jud.Proc.Code Ann. Sec. 3–824(c) specifically bars the use of juvenile records in *any* proceeding, *except* in a criminal case where the child is charged with perjury and the record is relevant.

3. "Telling the truth to people who misunderstand you is generally promoting falsehood." Anthony Hope, *Dolly Dialogue*, No. 14.
    "There is truth in falsehood, falsehood in truth." Robert Browning, "A Soul's Tragedy," Act II.
    "A truth that's told with bad intent, beats all the lies you can invent." William Blake, *Auguries of Innocence.*

Two State's witnesses, in *Curry,* were described by the State as follows:

"Based on these young men's backgrounds, the fact that they have kept an exemplary life themselves, I believe is more than reasonable explanation."

One of the witnesses, Cunningham, was described to the jury in glowing terms, to-wit:

"He took the stand and testified. No one impeached him. He has no criminal record. You don't have to be an accountant, doctor, lawyer, or judge to be a good person and there is absolutely nothing to show he is not a good person or not a truthful person."

In fact, Cunningham was then on probation stemming from a juvenile court adjudication of delinquency for theft. The other witness, Fuller, had no convictions, but was facing a charge of aggravated assault where juvenile jurisdiction had been waived.

In *Curry,* Chief Judge Gilbert said:

"In this case now before us, the prosecutor represented to the jury that the two youthful witnesses, upon whom he relied to establish the connection between the defendants and the decedent, had no 'criminal' records. That representation was true so far as it went. Malcolm, as we have seen, had a juvenile record, while Tracy, although charged with assault, ... had not, at the time the statement was made been convicted of any crime. Because the prosecutor's statement about the two youths was verisimilar, it was most certainly, under the circumstances of the instant case, deceiving to the jury. Moreover, characterization of the two witnesses as having lived 'exemplary' lives was a gross misstatement of fact designed to evince the trustworthiness of the witnesses and thus bolster the State's circumstantial case."

Both witnesses in *Curry* were crucial to the State's case, since they were eyewitnesses to the kidnapping that preceded the murder. Additionally, the State called attention to the appellant's not testifying by informing the jury that "a

witness has an absolute right not to testify if it's going to incriminate him."

In the case *sub judice*, we have no reference to the failure of the defendant to testify. Neither do we have an express reference to the witness Jordan leading an exemplary life or being a good and truthful person. More significantly, the State's case did not rise or fall on the veracity of Jordan alone. John Wesley Blake and Willie Banks, Jr., were with Jordan on the day of the killing and each identified appellant as the killer of the fourth member of the group, George Bishop, III. In *Curry*, the egregious error was the State's portrayal of its witnesses as "... having kept exemplary lives" and being "good persons, not untruthful." The similarity of this case to *Curry* is that in both cases the State misled the jury by stating that the witness had no criminal record; true as far as it went, but nonetheless misleading.

In *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974), the Court of Appeals stated that three factors are to be taken into account in assessing whether a prosecutor's remarks are prejudicial to the accused, namely:

1. The closeness of the case.
2. The centrality of the issue affected by the error.
3. The steps taken by the trial judge to mitigate the effect of the remarks on the jury.

Here, unlike *Curry*, Jordan's credibility was not the "keystone which holds the State's case together." Blake and Banks testified to the same facts; Blake, apparently, had no prior record, juvenile or otherwise. The centrality of the issue affected by the error relates to Jordan's credibility as a witness; the central issue in this case was the identity of the shooter. Admittedly, if the jury did not find Jordan credible, they could disbelieve his account of the shooting. Guilt or innocence would then rest on the jury's perception of the remaining two eyewitnesses. Considering the third factor, the court, as in *Curry*, did nothing, and thereby erred.

Improper comments do not *ipso facto* compel reversal. Such comments, warranting reversal, must appear likely to have misled or influenced the jury to the prejudice of the accused. Under the facts of this case, we do not believe the error committed as to one of three eyewitnesses compels reversal of the conviction. As in *Curry*, we strongly suggest that the State refrain from depicting its witnesses as having no criminal record where the State is aware that the witness it is vouching for has in fact been adjudicated delinquent for committing an act that, except for want of age, would be a crime of violence. Better that the State lose a thousand cases than lose public confidence in the integrity of its officers.

■ Appellant also argues that the trial court unfairly restricted appellant's cross-examination of Willie Banks by the "total curtailment" of appellant's attempt to question Banks regarding his prior criminal convictions. This argument is completely unfounded. At a bench conference, the trial judge questioned Banks about his prior convictions and discovered that he had been convicted of misdemeanor theft and giving a false report to a police officer. It was also established that Banks was charged with, but never convicted of, possession of a handgun and assault by threat.

On cross-examination of Banks by appellant's counsel the following colloquy occurred:

"Q. Now, Mr. Banks, in 1981, you were convicted of a crime of theft. Is that correct?

A. Yes.

Q. And in 1982, July of '82, you were convicted of a crime of giving a false report to the police. Is that correct?

A. Yes.

Q. Outside of those 2 convictions, have you ever been found guilty as an adult—

THE COURT: Sustained. We have reviewed that Mr. Miles."

The law is clear that only convictions of infamous crimes are admissible for impeachment purposes. Md.Cts. & Jud. Proc.Code Ann. § 10–905(a) (1984 Repl.Vol.). Mere charges or arrests may not be proved as a means of impeaching the witness. *See Taylor v. State,* 278 Md. 150, 360 A.2d 430 (1976).

■ In the case *sub judice,* a bench conference established that the only evidence of the witness' prior crimes which would be admissible to impeach him was evidence of the witness' prior convictions of theft and of filing a false report. Once appellant's counsel impeached the witness as to these prior crimes, the questioning could go no further.

We find, therefore, that the trial court did not abuse its discretion in refusing to allow further questioning of the witness regarding his prior convictions.

■ Appellant also argues that the trial court committed reversible error by failing to rule on appellant's motion to suppress photographic identifications of him as the victim's assailant. We disagree.

When appellant's Motion to Suppress was presented, the trial judge first heard testimony from the police detective who obtained the photographic identifications. The trial judge opined that appellant was not entitled to a preliminary determination of the admissibility of the extrajudicial identifications and then stated, "I will permit the State to produce evidence in the extrajudicial photographic identifications." At trial, the State called the detective to testify as to the circumstances surrounding the identifications. Appellant did not object to that testimony. The State also called Willie Banks, John Blake and Orpah Jordan, each of whom testified that he had made a photographic identification of appellant as the killer of George Bishop. At no point during this testimony did appellant object to the admission of this evidence. We hold that appellant has waived his argument as to the photographic identifications. As stated in *Jackson v. State,* 52 Md.App. 327, 332, 449 A.2d 438 *cert. denied,* 294 Md. 652 (1982), "if a pretrial

motion is denied and at trial appellant says he has no objection to the admission of the contested evidence, his statement effects a waiver." (Citing *Erman v. State,* 49 Md.App. 605, 434 A.2d 1030, *cert. denied,* 292 Md. 13 (1981).)

We agree with appellant's contention that a trial court has an affirmative duty to rule upon all pending motions before it. *See Brice v. State,* 254 Md. 655, 662–63, 255 A.2d 28 (1969); *White v. State,* 23 Md.App. 151, 155–56, 326 A.2d 219 (1974). We disagree, however, that the trial court's failure to rule on the motion to suppress in the case *sub judice* constituted prejudicial error.

Appellant's next complaint is that the jury was allowed to consider a statement of Willie Banks, Jr., which had not been properly admitted into evidence. Appellant concedes that no objection was lodged at the trial court level relating to this issue. In addition, the record is silent as to what material, other than properly admitted evidence, the jury took into the jury room. Under these circumstances, we are unable to consider appellant's third basis for reversal of his conviction. Md.Rule 1085.

■ Md. Rule 4–325(c) (former Rule 757b) specifies: "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." Under this rule, a trial judge is required to give a requested instruction which correctly states the applicable law and which has not been fairly covered in instructions already given. *Lansdowne v. State,* 287 Md. 232, 412 A.2d 88 (1980); *Coleman v. State,* 49 Md.App. 210, 431 A.2d 696 (1981). Where the facts do not support the requested theory of law, no instruction regarding that law need be given. *See Bolden v. State,* 44 Md.App. 643, 410 A.2d 1085 (1980).

■ Appellant suggests that the trial judge committed reversible error by failing to instruct the jury on the crime of manslaughter based on hot-blooded provocation. We disagree. In *Cunningham v. State,* 58 Md.App. 249, 258–

60, 473 A.2d 40 (1984), this Court (Moylan, J.) summarized the requirements for the "Rule of Provocation" to be invoked.

1. There must have been adequate provocation;

2. the killing must have been in the heat of passion;

3. it must have been a sudden heat of passion—that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool; and

4. there must have been a causal connection between the provocation, the passion and the fatal act.

Failure to prove any one of the necessary four elements is fatal to establishing a theory of hot-blooded provocation. *Cunningham,* 58 Md.App. at 258, 473 A.2d 40.

In the instant case, appellant failed to establish a theory of manslaughter based on hot-blooded provocation from the very beginning—the requirement that there must have been adequate provocation. Here, the evidence showed that appellant bumped into the victim, the two argued,[4] and then appellant turned and fired 4–6 shots from his gun in the direction of the victim. We find that appellant presented no evidence to generate a jury question on the issue of hot-blooded provocation. The instruction appellant sought in this regard, therefore, was properly denied.

We are unable to address appellant's sixth allegation of error—that the trial court erred in allowing hearsay evidence relating to the identification of appellant upon his arrest—because appellant did not object to the introduction of this evidence on the basis of hearsay at the trial court level. Accordingly, this claim is not preserved for appellate review. Md.Rule 1085; *Jackson v. State,* 288 Md. 191, 416 A.2d 278 (1980).

■ Finally, appellant argues that the trial court erred in finding appellant guilty of a violation of probation. Specifi-

---

4. Appellant told the victim, after their collision, "[y]ou must not know who I am!"

cally, appellant alleges that his right to due process was violated because the trial judge did not follow the guidelines for revoking probation set forth in *Knight v. State,* 7 Md.App. 313, 255 A.2d 441 (1969). Appellant agreed, however, to allow the trial court to go ahead with the violation of probation hearing despite the lack of prior notice and the opportunity to confront the probation agent. Therefore, appellant effectively waived his procedural rights under *Knight* and was properly found guilty of violating his probation.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.