810 A.2d 534

GREATER METROPOLITAN ORTHOPAEDICS, P.A., et al.,

v.

Sue WARD, Personal Representative of
the Estate of Archibald Ward.

No. 2417, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Nov. 6, 2002.

688

Albert D. Brault (Joan F. Brault and Brault, Graham, Scott & Brault, LLC on the brief), Rockville, for appellants.

Howard L. Siegel (Thomas E. Doyle and Siegel & Doyle, LLC on the brief), Rockville, for appellee.

Argued before DAVIS, ADKINS, SHARER, JJ.

DAVIS, Judge.

Appellants Greater Metropolitan Orthopaedics, P.A. (Greater Metropolitan) and Heart Center of Southern Maryland, LLP (Heart Center) appeal from the judgment of the Circuit Court for Prince George's County denying their motion *in limine,* motion for mistrial, and motion for new trial. Appellee Sue Ward,[1] Personal Representative of the Estate of Archibald Ward, filed suit against appellants on July 8, 1999, alleging medical malpractice in the care of Ward. During the trial, the court denied appellants' motion *in limine,* motion for mistrial, and motion for new trial and, on November 7, 2001, entered judgment following a jury verdict in favor of appellee. On January 9, 2002, appellants timely noted their appeal and

---

1. The Personal Representative, Sue Ward, is hereafter referred to as "appellee" and the decedent, Archibald Ward, is hereafter referred to as "Ward."

raised four questions for our review, which we restate and consolidate into three questions as follows:

I. Did the trial court err in denying appellants' motion *in limine* and allowing evidence of permanent injury without medical testimony in support thereof?

II. Did the trial court err in denying appellants' motion for mistrial and subsequent motion for new trial on grounds that appellee presented an improper closing argument before the jury?

III. Did the trial court fail to exercise any discretion in its ruling on the motion for new trial, thereby constituting an abuse of discretion?

We answer questions I and III in the affirmative and question II in the negative, reversing the trial court's judgment.

## FACTUAL BACKGROUND

On July 28, 1998, Ward, an 87–year–old male, was transported to the emergency room at Southern Maryland Hospital, where doctors determined that he had a broken hip. At the time of his fracture, he suffered from various health problems, such as difficulty swallowing, high blood pressure, atherosclerosis, and cardiovascular disease. Nonetheless, he was physically capable of all aspects of independent daily living and his doctor recommended surgery.

Dr. Edward Rabbit, a Greater Metropolitan employee, performed the surgery on Ward's broken hip on July 28, 1998. Prior to surgery, a series of baseline blood levels were obtained from Ward in order to adequately monitor him post-surgically. Immediately after the surgery, new blood tests indicated a nineteen-point drop in Ward's blood volume.

On July 29, 1998, Ward's condition was labeled "serious" as a result of his post-surgical blood loss and low blood pressure caused by his low blood volume. From July 29 through August 4, 1998, he received nine units of blood. Additionally,

by August 1, 1998, Ward's International Normalization Ratio (INR) count had increased to 7.34.[2]

Ward bled continuously from the time of his surgery on July 28 until August 4, 1998. The Greater Metropolitan doctors assigned to his case did nothing to determine the source of his bleeding and, on August 3, 1998, concluded that a "wait-and-see" approach was in order. That same day Ward suffered a stroke. At trial, appellee's expert testified that appellants' delay in treating Ward, as well as repeated episodes of hypotension,[3] caused the stroke. The jury returned a verdict in favor of appellee in the amount of $400,000.

## LEGAL ANALYSIS

### I

Appellants contend that the trial court erred in denying their motion *in limine* and allowing appellee to introduce evidence of permanent injury unaccompanied by supporting medical testimony. Specifically, appellants argue that it was improper to allow the jury to consider evidence beyond Ward's hospitalization because medical evidence was not presented demonstrating that such injuries were causally related to the stroke he suffered while hospitalized. Appellants further assert that it was improper for the jury to award damages based upon evidence of Ward's injuries beyond hospitalization.

Appellee contends that this issue is not preserved for appellate review because appellants failed to raise the issue at trial. Appellee, however, is incorrect. Appellants made a motion *in limine*, in which they objected to the "day-in-the-life" videotape that appellee wished to introduce at trial. Within that motion, appellants also objected to appellee's attempt to introduce Ward's injuries sustained after his hospi-

---

2. A normal INR is 1.0. INR is a measure of the patient's propensity to bleed or how thin a patient's blood is at a given point in time.

3. Hypotension refers to the low blood pressure caused by constant bleeding.

talization and attribute those injuries to the stroke without medical opinion. The court denied the motion, but stated that it would "allow a continuing objection to be made part of the record throughout with regard to [appellee's expert's] testimony, at least that evidence."

Additionally, appellants repeatedly objected when appellee began testifying about ailments that her husband experienced after the stroke. Appellants' attorney approached the bench and stated, "[Appellee is] going to attempt to attribute everything that was wrong with [Ward] to these [appellants]." The trial court overruled the objection. Direct examination of appellee resumed and the following colloquoy ensued:

[APPELLEE'S COUNSEL]: What about [Ward's] bowel function, bowel and bladder [after he suffered the stroke]?

[WITNESS]: Well, he was incontinent, which was a—

[APPELLANTS' COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[APPELLANTS' COUNSEL]: For the same reason I said before.

THE COURT: Overruled.

Appellants objected once again when appellee's counsel asked appellee to describe any problems Ward encountered after the stroke that were not associated with the broken hip. Despite appellants' contention that appellee was not qualified to testify on this matter, the trial court overruled the objection. We, therefore, conclude that appellants properly preserved the issue for appeal thereby warranting our discussion of its merits.

■ Whether expert testimony is necessary to prove the causal relationship between a defendant's negligence and a plaintiff's alleged damages is determined on a case-by-case basis. *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 376, 689 A.2d 1301 (1997). In *Wilhelm v. State Traffic Comm'n,* 230 Md. 91, 185 A.2d 715 (1962), the Court of Appeals stated that

[t]here are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact[-]finding which properly falls within the province of medical experts . . . proof of the cause must be made by such witnesses.

*Id.* at 99–100, 185 A.2d 715 (citations omitted). Consequently, when a "complicated medical question" is involved, Maryland courts have declared the need for expert medical testimony. *See, e.g., Craig v. Chenoweth,* 232 Md. 397, 194 A.2d 78 (1963)(holding expert testimony was necessary in order to establish a causal nexus between the car accident and the partial hand paralysis that plaintiff suffered six weeks after the accident); *Desua v. Yokim,* 137 Md.App. 138, 768 A.2d 56 (2001)(holding that the evidence of causation was insufficient without an expert because the injury was diagnosed too long after the accident); *Strong v. Prince George's County,* 77 Md.App. 177, 549 A.2d 1142 (1988)(opining that proof of a causal connection between an automobile accident suffered by plaintiff and the onset of pancreatitis several months later was necessary); *Kraft v. Freedman,* 15 Md.App. 187, 289 A.2d 614 (1972)(asserting that expert testimony was necessary to prove the causal relationship between an automobile accident allegedly resulting in the recurrence of plaintiff's ileitis).

In *Wilhelm,* appellant claimed that expert testimony was unnecessary to prove the causal connection between the car accident and her three subsequent injuries. As to the first alleged injury—emotional problems—the Court held that expert testimony was necessary in order to submit the question to the jury, asserting that "a question involving the causes of

emotional disturbances in a person sufficient to evoke, subconsciously, grossly exaggerated symptoms is an intricate and complex one, peculiarly appropriate for science to answer." *Wilhelm*, 230 Md. at 101, 185 A.2d 715. The Court likewise opined that the second claimed injury—low back pain during her menstrual periods—was an inappropriate jury question in the absence of medical testimony because the question was complicated and presented an "involved and intricate medical inquiry." *Id.*

The Court, however, held that Wilhelm's third injury—skin depigmentation—was not a complicated medical question and, therefore, did not require expert medical testimony. *Id.* at 104, 185 A.2d 715. The car accident in which Wilhelm was involved left her with a large bruise on her face. Within a few weeks, Wilhelm developed a skin depigmentation confined solely to the area of the bruise. Noting that Wilhelm had never experienced any previous skin depigmentation on her face, the Court opined that "common experience, knowledge and observation of laymen, we think, would permit a rational inference that the bruise had probably caused the loss of pigmentation, in the absence of evidence of any other equally probable cause." *Id.* at 104, 185 A.2d 715.

[3] In the case *sub judice*, whether Ward's alleged permanent injuries, including incontinence, difficulty seeing from one side, and difficulty with speech and swallowing, are causally connected to the stroke is a complicated medical question that requires expert testimony. It is complicated because Ward was an 87–year–old male who already suffered from various health problems associated with old age. The jury would certainly have difficulty distinguishing between effects of the stroke and effects from Ward's deteriorating health condition. Thus, it was necessary for appellee to present expert medical testimony demonstrating that Ward's injuries were in fact permanent and were caused by the stroke. Clearly, appellee's testimony regarding her personal knowledge of Ward's incontinence and swallowing difficulties after the stroke do not

qualify as expert medical testimony and is insufficient to prove a causal connection.

Appellee asserts that she presented adequate expert medical testimony indicating a causal relationship between Ward's permanent injuries and his stroke. Appellee's expert, Dr. Seneff, testified as follows:

> [APPELLANTS' COUNSEL]: Doctor, with regard to your review of the records through August 12th, 1998, did you happen to note what damages that Mr. Ward sustained that were not attributable to his broken hip?

> [WITNESS]: The homonomous hemianopsia, which he had difficulty seeing on one side, his difficulty with speech and swallowing. There's a description in the medical records about him having trouble eating and aspirating, for which he subsequently needed a feeding tube inserted. Those are all characteristic of people who have low flow or strokes in the posterior part of the brain because those functions, those cranial nerves come off that part of the brain.

> . . .

> [APPELLANTS' COUNSEL]: And it's your opinion that [appellants' violation of the standard of care was] the proximate cause of the damages that you've just described?

> [WITNESS]: Yes.

■ Under Maryland law, "the test of the sufficiency of the evidence to take the question of causal relationship to the jury is 'reasonable probability,' or 'reasonable certainty.'" *Wilhelm*, 230 Md. at 103 n. 1. Nonetheless, "sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause." *Id.* (quoting *Charlton Bros. Co. v. Garrettson*, 188 Md. 85, 94, 51 A.2d 642 (1947)).

■ Appellee offered evidence that it was probable that appellants' negligence caused Ward's stroke, which then led to

various injuries. In fact, Dr. Seneff testified that, in his opinion, there was a reasonable degree of medical certainty that Ward's injuries could have been prevented if appellants had intervened sooner. Dr. Seneff, however, did not discuss whether these injuries were permanent. In fact, appellee presented no evidence indicating how long Ward would have difficulty swallowing and speaking. Therefore, the jury should not have been permitted to calculate damages based upon Ward's permanent injuries because there was insufficient evidence to permit a conclusion that the injuries were permanent.

## II

Appellants next contend that the trial court erred in failing to grant either a mistrial or a new trial as a result of appellee's closing argument. They first claim that appellee improperly argued a theory of causation without evidentiary support in her closing argument. Their second assertion is that appellee improperly attacked opposing counsel and appellants' expert witnesses in her closing argument.

Appellee counters, claiming that appellants' failure to object during her closing argument prevents them from raising these issues on appeal. Appellants acknowledge that they failed to object during appellee's closing argument, but, relying upon *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 612 A.2d 1294 (1992), claim that their challenge is nonetheless preserved. They further assert that their challenge is preserved because trial tactics prevented them from objecting during appellee's closing. We will address both of appellants' contentions in turn.

## A

Appellants mistakenly rely upon *Buck* for their proposition that the failure to seasonably object does not preclude the moving party from raising the objection in the motion for new trial. In *Buck*, the trial court granted plaintiff Kenneth Buck's motion for a new trial on the grounds that the award of

damages was grossly inadequate and was likely the result of the improper closing arguments of defendant's counsel. After the new trial concluded, the defendant appealed, claiming that a new trial should not have been granted. The defendant argued that Buck could not support his motion for the new trial with reference to those alleged errors to which he failed to seasonably object.

The Court of Appeals held that the defendant's argument was without merit because non-preservation of a claim does not serve as a legal bar to the trial judge's consideration of the claim. *Id.* at 61–62, 612 A.2d 1294. The Court, however, clearly stated:

> The defendant is correct in arguing that ordinarily a party will not be permitted to raise on appeal an error to which he has not interposed a seasonable objection at trial. Accordingly[,] if [the trial judge] had denied Buck's motion [for a new trial] in this case [based on his non-preserved claim], Buck would not have been permitted to argue those matters on appeal.

*Id.* at 61, 612 A.2d 1294.

■ More recently, in *Anderson v. Litzenberg*, 115 Md.App. 549, 694 A.2d 150 (1997), appellant Cramaro Tarpaulin Systems, Inc. (Cramaro) claimed that the trial court should have granted its motion for new trial because appellee Monteith Litzenberg presented insufficient evidence to support its claim for lost future earnings. In our review of the record, we ascertained that Cramaro did not raise this claim until its post-trial motion. *Id.* at 578–79, 694 A.2d 150. Refusing to address the merits of Cramaro's contention, we cited *Buck*, and opined that "[w]hen a trial court denies [a motion for new trial], the Court of Appeals has indicated that the movant is precluded from raising those substantive issues on appeal." *Id.* at 579, 694 A.2d 150. Thus, "[a] party who does not raise an issue at trial, and later pursues the point in a post-trial motion, is precluded from raising the substantive issue on appeal." *Brown v. Contemporary OB/GYN Assocs.*, 143 Md. App. 199, 248, 794 A.2d 669 (2002).

## B

We now turn to appellants' contention that their arguments are preserved because trial tactics prevented them from objecting during appellee's closing argument. Appellants assert that objecting during appellee's closing argument would have underscored appellee's inappropriate comments. Furthermore, appellants state that, had the trial court overruled the objection, the comments would have become "emblazoned in the jury's mind . . . ."

Appellants direct our attention to *Curry v. State,* 54 Md. App. 250, 458 A.2d 474 (1983), in which we held that, despite the defendant's failure to object during the prosecutor's closing argument when the allegedly improper comments were made, the matter was preserved for our review. In *Curry,* the defendant claimed that the prosecutor's misrepresentations to the jury of the character of two State's witnesses and improper comments on the defendant's right not to testify were prejudicial and warranted a new trial. The State asserted that the defense objections were not timely because counsel did not interpose the objections until the prosecutor completed his argument. *Id.* at 256, 458 A.2d 474. Although we expressed our preference "that the objection be invoked at the time the supposedly objectional [sic] comments are made," we, nonetheless, held that the matters were preserved for our review because of defense counsel's precarious position: "If [defense counsel] had objected at the time the remark was made, they might have underscored the prosecutor's comments and perhaps added greater impact to those remarks. Additionally, they ran the risk of the court's overruling the objections, thus emphasizing to the jury the 'correctness' of the comments." *Id.*

In *Grier v. State,* 116 Md.App. 534, 545, 698 A.2d 1133 (1997), *rev'd on other grounds,* 351 Md. 241, 718 A.2d 211 (1998), we clarified our holding in *Curry,* stating that "[w]e shall continue to hold that objections to improper argument are timely if interposed either (1) immediately after the allegedly improper comments are made, or (2) immediately after the argument is completed." We asserted, however, that we would decline "requests to review 'improper argument' objec-

tions that were not presented to the trial judge until after the jurors have been excused from the courtroom." *Id.*

■ In the case *sub judice,* appellants did not object immediately after the allegedly improper comments were made, nor did they object immediately after appellee concluded her closing argument. Appellants had the opportunity to object before they began their closing, immediately following their closing argument, after the judge discussed the deliberation process with the jury, or before the judge dismissed the jury to begin deliberations. Instead, appellants waited until the following day to move for a mistrial on the grounds that the closing argument was improper, upon being informed that the jurors were deadlocked on the issue of causation and that the trial court was going to give them an *Allen*[4] charge. We, therefore, hold that appellants' "improper closing argument" issue has not been preserved for our review.

## III

Appellants' final contention is that the trial court failed to exercise any discretion in ruling on appellants' motion for new trial and that this constitutes an abuse of discretion as a matter of law. In its ruling, the trial court stated:

The [c]ourt's ruling is not going to be on the basis of whether or not there was a waiver of any objection, it's not going to be on the basis of whether or not any argument was appropriate or inappropriate. The [c]ourt recognizes that the motion raises very meritorious issues and the [c]ourt, of all the arguments, the [c]ourt [is] perhaps most disturbed about the way discovery played it's [sic] way into this case. But, we do everything in real time and in the face of the trial we decided to proceed in the manner in which we proceed, we proceeded, that is. The [c]ourt believes that the motions, the motion really raises some questions of law as to this issue of waiver, as to the issue of

---

4. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

the appropriateness of certain argument. But, the [c]ourt believes that—this action will not be courageous. *The [c]ourt [is] going to deny the motion for a new trial to allow the Court of Special Appeals to make a determination on a number of issues that might be the subject of appeal in this case. So that when the case is tried again, if it's tried again it can be tried in a manner that gives this member of the bench, as well as counsel, some more direction so that we can perhaps avoid any error that might be found to have existed in this trial and make way for new error.* But, I'm denying the motion for new trial.

Appellee contends that the trial court's statement was comparable to a trial judge ruling and saying nothing at all. We disagree.

 Under Maryland law, "a trial judge who encounters a matter that falls within the realm of judicial discretion *must* exercise his or her discretion in ruling on the matter." *Gunning v. State*, 347 Md. 332, 351, 701 A.2d 374 (1997). The record must clearly indicate that exercise of discretion. *Id.* We have defined discretion as "a reasoned decision based on the weighing of various alternatives." *Lone v. Montgomery County*, 85 Md.App. 477, 485, 584 A.2d 142 (1991) (citations omitted). It has also been defined as "that power of decision exercised to the necessary end of awarding justice and based upon reason and law, but for which decision there is no special governing statute or rule." *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312, 701 A.2d 110 (1997) (citations omitted). The court's failure to exercise discretion usually amounts to reversible error. *Gunning*, 347 Md. at 351, 701 A.2d 374; *Lone*, 85 Md.App. at 485, 584 A.2d 142.

 In the case *sub judice*, the trial court failed to exercise discretion. Rather than base its decision on reason and law, the record indicates that the court based its decision solely upon its certainty that this case would be appealed. Unlike a trial judge, who rules without setting forth any reasoning, the trial court here expressly abdicated its responsibility to analyze the law and rule upon the motion. This

does not amount to an exercise of discretion and, consequently, constitutes a clear abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**